IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CARROLL CREIGHTON OGLESBY,**

    Plaintiff,

v.                                                            Civil Action No. **3:12CV194**

**DOCTOR ABBASSI,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Carroll Creighton Oglesby, a Virginia inmate proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983[1] action. The action is proceeding on Oglesby's Particularized Complaint (ECF No. 14 ("Complaint")), wherein he alleges that Defendants Dr. Abbassi, Ms. Cyriax, R.N., Medical Department Supervisor, and Ms. Baker, R.N., violated his rights under the Eighth Amendment[2] during his confinement in the Riverside Regional Jail. (Compl. 1–2.) The matter is before the Court on Oglesby's failure to serve Ms. Baker and the Motion to Dismiss filed by Dr. Abbassi[3] and Nurse Cyriax ("Defendants"). Appropriate *Roseboro*[4] notice

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] The parties spell Dr. Abbassi's name as both "Abbassi" and "Abassi." For the sake of consistency the Court spells his name as "Dr. Abbassi."

[4] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

accompanied the Motion to Dismiss. (ECF No. 20.) Oglesby has responded. (ECF No. 25.) The matter is ripe for disposition.

## I. FAILURE TO SERVE MS. BAKER

Pursuant to Federal Rule of Civil Procedure 4(m),[5] Oglesby had one hundred and twenty (120) days from the filing of the complaint to serve the defendants. Here, that period commenced on November 14, 2012. By Memorandum Order entered February 19, 2013, the Court reminded Plaintiff that he must promptly provide a street address for Defendant Baker if Plaintiff desired the Court's assistance in effecting service on Defendant Baker. (ECF No. 28.) Plaintiff responded but provided no address. (ECF No. 31.)

By Memorandum Order entered on April 11, 2013, the Court directed Oglesby, within eleven (11) days of the date of entry thereof, to show good cause for his failure to serve Defendant Baker within the time required by Rule 4(m). (ECF No. 32.) In response, Oglesby states that he wishes to drop Baker as a defendant because she "cannot be located." (ECF No. 33, at 2.)

Rule 4(m) requires that, absent a showing of good cause, the Court must dismiss without prejudice any complaint in which the plaintiff fails to serve the defendant within the allotted 120-day period. Fed. R. Civ. P. 4(m). Courts find good cause to extend the 120-day time period when the plaintiff has made "'reasonable, diligent efforts to effect service on the defendant.'"

---

[5] Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).

2

*Venable v. Dep't of Corr.*, No. 3:05cv821, 2007 WL 5145334, at *1 (E.D. Va. Feb. 7, 2007) (quoting *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 528 (D. Md. 1999)). Neither *pro se* status nor incarceration constitutes good cause. *Sewraz v. Long*, No. 3:08CV100, 2012 WL 214085, at *1–2 (E.D. Va. Jan. 24, 2012) (citing cases). Because Oglesby fails to demonstrate good cause for his failure to serve Defendant Baker, the claims against Defendant Baker will be DISMISSED WITHOUT PREJUDICE.

## II.  STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations

3

omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. SUMMARY OF ALLEGATIONS

Oglesby alleges that during his incarceration in the Riverside Regional Jail, the medical department denied him adequate medical care for his multiple ailments he had upon his admission to the jail.[6] Oglesby explains that he arrived at the Riverside Regional Jail in May 2011, after turning himself over to authorities. (Compl. 2.) Oglesby claims that the medical department examined him upon his entry, noted his conditions and medications, and then "cancelled" his scheduled doctor's appointments including an appointment with his primary care

---

[6] Oglesby alleges that: in 2005 he was diagnosed with Hepatitis C; in August 2009 he suffered a gunshot wound to the face and had many corrective surgeries; in September 2010 he fell and broke several bones and suffered a concussion; and, he suffers from arthritis in the shoulder. (Compl. 2–3, 6, 8.)

4

physician to "to renew prescription," an appointment with an ear, nose, and throat specialist, his monthly appointment with his psychiatric care doctor, and his dental appointments. (*Id.* at 3, 5.) Oglesby also contends that when his prescriptions for "narcotic pain meds ... (Vicaprofen), nerve pain meds (Lyrica), maintenance nerve pain meds (Lorazepam), nighttime sleep aid for PTSD ... (Ambien)," and Abilify ran out, the medical department refused to prescribe and refill these prescriptions, or allow him to keep his appointments with outside doctors "because of 'lack of funds' on Mr. Oglesby's behalf." (*Id.* at 5.)[7] Oglesby also alleges:

> The previous (2010) trauma to Mr. Oglesby's left ankle, and both feet has him diagnosed as a chronic pain patient. Dr. Abbassi sees Mr. Oglesby and without an actual exam states "obviously trauma, order medical files from MCV/VCU, an x-ray to be ordered and a mild pain reliever will be prescribed for (7) seven days along with a bottom bunk – bottom tier status due to mobility and head injury issues." Even after Dr. Abbassi was aware of the unresolved medical problems Mr. Oglesby continued to file request form[s] and follow the grievance procedure to no avail. Still there is bone movement and swelling in Mr. Oglesby's ankle. Pain so severe at times walking is difficult. . . .
>
> Additionally[,] Mr. Oglesby was diagnosed in 2005 [with] Hepatitis C, a type of liver cancer. Thus[,] without being treated the result is liver failure – death. Monitoring liver function through blood work is the only way to evaluate the progression. Others factors can accelerate this condition such as prescribing of certain medications like acetaminophen (Tylenol). Dr. Abbassi and the supervising nurses were aware of Oglesby's disease via medical records, grievances and written request forms as well as Mr. Oglesby's requests for the drug "Interferon" (a known cure). Mr. Oglesby had an allergic reaction to another drug Tramadol which file clearly state[s] allergy. The combination of the Tylenol, negligence in monitoring blood, Tramadol reaction clearly indicates more than overworked and understaffed, especially when Dr. Abbassi stresses[,] "If you pay for it we take care of it." Mr. Oglesby has only been asking for transfer to the Department of Corrections whereas he can receive "Interferon" treatment and have the many medical problems addressed especially pain. . . .
> . . . .
> Since Mr. Oglesby's confinement his shoulders became inflamed with limited mobility. After numerous request[s] (written [and] verbal) Dr. Abbassi reacted with treatment of an x-ray and "Tylenol" again after Mr. Oglesby pointed out the drug issues and blood work problems, no meds prescribe[d]. Dr. Abbassi diagnoses him with "bursitis or arthritis," but when x-ray came back the x-ray

---

[7] The Court removes the emphasis and corrects the spelling and capitalization in the quotations from Oglesby's Complaint.

5

> technician diagnosed Oglesby with degenerative shoulder joint disease. This causes limited mobility and pain that only progresses without shoulder replacements. The doctor gave Oglesby a shallow injection of cortisone in the right shoulder, ineffective. . . . The deliberate indifference of Dr. Abbassi and the medical dept. violated Oglesby's Eighth Amendment rights.

(*Id.* at 6–8 (paragraph numbers omitted).) Oglesby seeks monetary damages. (*Id.* at 9.)

In his Response to the Motion to Dismiss, Oglesby indicates that in December 2012, he was transferred to the custody of the Department of Corrections. (*See* Resp. 6–7.)

## IV. ANALYSIS

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [allege] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

To make out an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)

(citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . ." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974).

### A.     Nurse Cyriax

Oglesby fails to state a claim of denial of adequate medical care against Nurse Cyriax. Oglesby states that "ultimately the burden of blame lies on the supervisors" such as Nurse Cyriax because "they were both sent many request forms and grievances." (Compl. 4.) Because a supervising prison official cannot be liable under a theory of vicarious liability, *see Iqbal*, 556 U.S. at 676, Oglesby must allege facts suggesting Nurse Cyriax's personal responsibility in the deprivation of his Eighth Amendment rights.

Here, Oglesby fails to allege that Nurse Cyriax, the Medical Department Supervisor, had any direct involvement in the decisions about Oglesby's medical care. Thus, he fails to show that she possessed personal knowledge of the Oglesby's medical treatment or particular medical needs. Oglesby's brief mention of Nurse Cyriax alleges that Nurse Cyriax received Oglesby's grievances about his medical care and therefore she knew of his condition. (Compl. 4.) While an inmate's letters to prison administrators may establish a basis for § 1983 liability, the plaintiff must allege facts that suggest "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to

8

inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837). Oglesby must allege that because of the purported grievances, Nurse Cyriax "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Oglesby's Complaint lacks any detail about the content, frequency, or manner of transmission of his communications to Nurse Cyriax. Thus, Oglesby's vague allegations fall short of permitting the conclusion that his complaints placed Nurse Cyriax on sufficient notice of an excessive risk to Oglesby's health or safety. *See id.* As such, Oglesby's limited factual allegations against Nurse Cyriax fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683). Oglesby fails to allege sufficiently that Nurse Cyriax actually perceived that Oglesby faced a substantial risk of serious harm from the medical care or lack of medical care he received. Accordingly, Oglesby insufficiently states an Eighth Amendment claim against Nurse Cyriax.

### B. Dr. Abbassi

#### 1. Cancelled Doctor's Appointments

Oglesby faults the medical department in general, for cancelling his outside doctor's appointments scheduled prior to his incarceration "because of [Oglesby's] 'lack of funds.'" (Compl. 5.) Oglesby alleges no injury from these actions. While Oglesby may have desired to continue to see certain private physicians, Oglesby fails to allege facts that indicate that any of the desired outside doctor's appointments were medically necessary. *See Bowring*, 551 F.2d at 48. As an inmate, Oglesby simply lacks entitlement to the medical treatment of his choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04).

9

Oglesby also fails to allege facts that indicate that Dr. Abbassi knew of and disregarded an excessive risk to Oglesby's health. *See Farmer*, 511 U.S. at 837. First, Oglesby fails to allege that Dr. Abbassi had any personal involvement in the cancellation of Oglesby's outside medical appointments. Moreover, Oglesby fails to allege sufficient facts that Dr. Abbassi actually perceived that Oglesby faced a substantial risk of serious harm by refusing to allow him to attend the outside medical appointments. Accordingly, Oglesby fails to state an Eighth Amendment claim on this basis.

### 2. Failure to Renew Prescriptions

Oglesby also faults the medical department in general and Dr. Abbassi for refusing to refill certain prescriptions for pain and mental disorders prescribed before his incarceration. Oglesby alleges no injury from these actions.[8] While Oglesby may have desired certain prescription drugs, Oglesby fails to allege facts suggesting a medical necessity for him to take these specific prescriptions. *See Bowring*, 551 F.2d at 48. As discussed above, Oglesby simply lacks entitlement to the medical treatment of his choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04).

Oglesby again fails to allege facts that indicate that Dr. Abbassi knew of and disregarded an excessive risk to Oglesby's health by failing to refill certain prescriptions. *See Farmer*, 511 U.S. at 837. As discussed below in section IV.B.3, Dr. Abbassi addressed Oglesby's complaints of pain and prescribed a course of treatment. Oglesby disagreement with Dr. Abbassi over the

---

[8] In response to the Motion to Dismiss, Oglesby suggests for the first time that "pain medications, especially addictive narcotics were abruptly discontinued causing withdrawals." (Resp. 4.) Oglesby's vague allegation that he suffered "withdrawals" from the discontinuation of certain medications, fails to suggest that he suffered serious harm.

type of medication prescribed states no claim of deliberate indifference. *See infra* IV.B.3.[9]

Oglesby fails to allege sufficient facts that Dr. Abbassi actually perceived that Oglesby faced a substantial risk of serious harm by refusing to refill certain prescriptions. Oglesby fails to state an Eighth Amendment claim based on Dr. Abbassi's refusal to refill the prescriptions Oglesby's desired.

### 3. Inadequate Care for Pain

Oglesby complains of chronic pain from prior injuries sustained from a 2009 gunshot wound, a 2010 fall, and degenerative shoulder disease. Specifically, Oglesby argues that Dr. Abbassi denied him adequate medical care for ankle pain, shoulder pain from degenerative shoulder joint disease, and denied him sinus surgery. First, Oglesby fails to allege he sustained any injuries, much less a serious or significant physical or emotional injury from any action or inaction of Dr. Abbassi. *See Strickler*, 989 F.2d at 1381. Oglesby also fails to allege facts that indicate that Dr. Abbassi knew of and disregarded an excessive risk to Oglesby's health. *See Farmer*, 511 U.S. at 837. Nor does the Complaint indicate that Dr. Abbassi simply ignored Oglesby's discomfort. Instead, as explained below, Oglesby admits that Dr. Abbassi saw Oglesby on more than one occasion for his complaints and prescribed treatment plans.

#### a. Ankle and Shoulder Pain

Oglesby faults Dr. Abbassi for deliberate indifference to his ankle and foot pain from a prior injury. When Oglesby complained of this pain, Dr. Abbassi prescribed pain medication

---

[9] The Court acknowledges that Oglesby alleges that Dr. Abbassi purportedly refused to provide certain prescriptions and treatment because of Oglesby's inability to pay for them. (Compl. 5.) While the refusal to treat an inmate based on their inability to pay may raise deliberate indifference concerns, *see* Wallace v. Dyson, No. 1:11cv1384 (TSE/JFA), 2012 WL 253100, at *5 (E.D. Va. Jan. 26, 2012) (citing *Collins v. Romer*, 962 F.2d 1508, 1514 (10th Cir. 1992)), Oglesby's allegations fail to raise such concerns. Oglesby was not denied necessary medical care or treatment based upon his inability to pay, just the specific treatments he desired. Oglesby lacks entitlement to the medical treatment of his choosing. *Kersh*, 501 F.2d at 589.

11

and ordered x-rays and Oglesby's prior medical records. (Compl. 6.) Dr. Abbassi also prescribed Oglesby to sleep in a bottom bunk on the bottom tier based upon Oglesby's mobility concerns and his prior head injury. (*Id.*) Oglesby also faults Dr. Abbassi for failing to properly address his shoulder pain and failing to order shoulder replacement surgery. However, when Oglesby complained of shoulder pain, Dr. Abbassi order x-rays, diagnosed Oglesby with bursitis or arthritis,[10] prescribed pain medication, and gave him a cortisone injection. (*Id.* at 8.)

While Dr. Abbassi prescribed milder pain relievers rather than renew certain prescription pain medications that Oglesby desired,[11] Oglesby's disagreement with Dr. Abbassi over the discontinuation of certain prescription drugs states no claim of deliberate indifference. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Diaz v. Turner*, 160 F. App'x. 360, 362–63 (5th Cir. 2005) (finding inmate's disagreement with decision by medical personnel not to provide him with non-prescription medication on demand fails to constitute deliberate indifference to medical needs); *Reyes v. Gardener*, 93 F. App'x 283, 285 (2d Cir. 2004) (concluding defendants' decision to prescribe Tylenol or Motrin to manage prisoner's pain and to administer Demerol or Morphine only when necessary did not constitute deliberate indifference).

"Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes*

---

[10] While Oglesby suggests that the x-ray technician "diagnosed" him with "degenerative shoulder joint disease" (Compl. 8), the Court notes that degenerative shoulder joint disease is osteoarthritis. *See* http://webmd.com/osteoarthritis/guide/shoulder-osteoarthritis-degnerative-arthritis-shoulder (last visited July 16, 2013).

[11] It appears that Dr. Abbassi also prescribed other stronger pain medications that Oglesby fails to mention. In his discussion of the denial of adequate medical care for his Hepatitis C, Oglesby suggests that Dr. Abbassi prescribed him Tramadol despite an allergy to the drug. (Compl. 7.) Tramadol is a prescription drug used to treat moderate to severe pain. *See* http://www.webmd.com/drugs/mono-5239-TRAMADOL+-+ORAL.aspx?drugid=4398&drugid=4398&drugname=tramadol+Oral&source=2 (last visited July 16, 2013).

*v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Oglesby alleges no extreme circumstances here. *See, e.g., Martinez v. Mancusi*, 443 F.2d 921, 924–25 (2d Cir. 1970) (granting relief when prison doctor forced prisoner plaintiff, without hospital ordered pain medication, to walk out of hospital and stand for meals after plaintiff had leg surgery for which hospital specialist had ordered plaintiff to lie flat and not to walk). Oglesby alleges no more than a disagreement with Dr. Abbassi's professional medical opinion about his treatment, and thus, fails to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6).[12]

### b. Sinus Surgery

Buried in his complaint, Oglesby suggests that he needed "surgery to sinus/septum." (Compl. 4.) In his response to the Motion to Dismiss he adds that he has a "deteriorating septum." (Resp. 4.) Oglesby fails to allege sufficient facts to suggest that Dr. Abbassi knew of and disregarded a substantial risk of serious harm by not ordering sinus surgery. Thus, Oglesby fails to state an Eighth Amendment claim on this ground.

### 4. Hepatitis C

Oglesby was housed in the Riverside Regional Jail from May 2011 until his transfer to the Department of Corrections by December 2012. (Resp. 6–7; Notice of Change of Address

---

[12] In his Response, Oglesby alleges that "Doctor Ruby recently seen plaintiff [,] overrode previous treatment [and] ordered reinstatement of pain meds Oxycotin, immediate transfer to D.O.Corrections." (Resp. 7.) While Oglesby's allegations lack clarity, to the extent he intends to demonstrate that Doctor Ruby's treatment plan proves Defendant Abbassi's deliberate indifference, he fails to state an Eighth Amendment claim. Oglesby fails to allege any exceptional circumstances justifying judicial interference with the professional judgment of Dr. Abbassi. If an inmate's "disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *see United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011).

13

(ECF No. 23) 1.) During his incarceration in Riverside Regional Jail, he faults the medical department in general for refusing to provide a desired Hepatitis C treatment, Interferon, or to transfer him to a different facility in order to receive the treatment. Oglesby states that Defendant Abbassi knew of his Hepatitis C "via medical records, grievances and written request forms as well as [his] requests for the drug "Interferon" (a known cure)." (Compl. 7.) In an incoherent fashion, Oglesby states: "Mr. Oglesby had an allergic reaction to another drug Tramadol which file clearly state[s] Allergy. The combination of the Tylenol, negligence in monitoring blood, Tramadol reaction clearly indicates more than overworked and understaffed, especially when Dr. Abbassi stresses[,] 'If you pay for it we take care of it.'" (*Id.*) A generous reading of the Complaint suggests that Oglesby alleged that Dr. Abbassi also negligently prescribed Tylenol for pain which can accelerate symptoms of Hepatitis C. (*Id.*)

For a claim of nontreatment to constitute deliberate indifference, it "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). An Eighth Amendment claim may survive a motion to dismiss based on a defendant's conduct in exposing an inmate to an unreasonable risk of *future* harm. See *Helling v. McKinney*, 509 U.S. 25, 35 (1993). "To establish that such exposure violates the Eighth Amendment, however, the conditions presenting the risk must . . . give rise to 'sufficiently *imminent* dangers.'" *Baze v. Rees*, 553 U.S. 35, 49–50 (2008) (quoting *Helling*, 509 U.S. at 34–35). This causal relationship must be "'*sure or very likely*'" to occur. *Id.* at 50 (quoting *Helling*, 509 U.S. at 33).

Oglesby asserts that Dr. Abbassi exposed Oglesby to an unreasonable risk of serious damage to his future health by failing to prescribe Interferon treatment for his Hepatitis C or to transfer him to a different facility for treatment, and by prescribing Tylenol for pain. (Compl. 7.)

14

Oglesby claims that his failure to receive any treatment could lead to eventual "liver failure – death." (*Id.* at 6.) Oglesby states that taking Tylenol could "can accelerate this condition." (*Id.* at 7.)[13]

Despite Oglesby's assertions, this exposure, is neither sure nor very likely, to cause an imminent, dangerous risk of future harm. Oglesby fails to allege that he has suffered from any physical distress from Hepatitis C or that he has previously required treatment that Defendant Abbassi discontinued. *Cf. Erickson v. Pardus*, 551 U.S. 89, 90–94 (2007) (finding inmate who was diagnosed as requiring Hepatitis C treatment by the prison, and was discontinued from prescribed treatment, sufficiently stated an Eighth Amendment claim). Nor does Oglesby allege that he suffered any symptoms or progression of the disease while under Dr. Abbassi's care, that made the drug Interferon a medical necessity. *See Lee v. Gurney*, No. 3:08CV161, 2011 WL 2681225, at *5–6 (E.D. Va. July 8, 2011) (citing cases for the proposition that refusal to provide certain desired treatments for Hepatitis C not deliberate indifference when not a medical necessity). Because Oglesby alleges no present harm and his allegation of future harm is speculative, he fails to state an Eighth Amendment claim.

Moreover, Oglesby was transferred in December 2012 and Dr. Abbassi no longer prevents him from receiving the desired Interferon treatment. For claims of deliberate indifference based on a delay in medical care, in addition to demonstrating a medical need that was objectively serious, a plaintiff must also establish that the delay in the provision of medical care "'resulted in substantial harm.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb*, 281 F. App'x at 166–67 & n.13 (explaining that where an Eighth Amendment claim is predicated on a delay in the

---

[13] Oglesby never states whether he actually took Tylenol, but instead states he "pointed out the drug issues" of Tylenol to Dr. Abbassi. (Compl. 8.)

provision of medical care, the plaintiff must demonstrate "'that the delay resulted in substantial harm'" (quoting *Sealock v. Colorado*, 218 F.3d 1210, 1205 (10th Cir. 2000)). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citing cases); *see Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

While Oglesby alleges that he was diagnosed with Hepatitis C in 2005 and speculates that the condition may worsen over time without proper treatment, he fails to allege any actual harm, much less substantial harm, due to a delay in receiving Interferon. Indeed, Oglesby fails to allege that he suffered any symptoms or progression of the disease while under Dr. Abbassi's care. Given Oglesby's failure to allege substantial harm, he fails to adequately allege an Eighth Amendment violation.

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendants Cyriax and Abbassi (ECF No. 20) will be GRANTED. Oglesby's claims will be DISMISSED WITHOUT PREJUDICE.

An appropriate Order shall issue.

Date: 9-3-13
Richmond, Virginia

/s/
James R. Spencer
United States District Judge